**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

**CASE NO.: 9:23-CV-81329**
**JUDGE MIDDLEBROOKS**

NATALIE SMITH, as
Personal Representative of the ESTATE OF CHAD SMITH,
on behalf of the Estate and his Survivors,

Plaintiff,

vs.

MARTIAN SALES, INC., a Wyoming corporation,
Defendant

_____/

# Expedited Motion to Remand Case  to State Court

Plaintiff NATALIE SMITH, as Personal Representative of the ESTATE OF CHAD SMITH,

through undersigned counsel, hereby moves the Court to remand this case back to state court and

states

**Grounds and Date for Expedited Ruling on Motion**:  Plaintiff requires an expedited ruling on this

motion by October 13, 2023.  This motion should be expedited because it concerns remand of the case

back to state court.  Absent a speedy ruling, Plaintiff will be forced to respond to Defendant's lengthy

motion to dismiss and will have to choose between waiving remand or risking default.

## I.      **Background Facts:**

1.  Decedent Chad Smith was domiciled in Palm Beach County when he passed away on

     August 9, 2021 in Palm Beach County.

2.  Defendant MARTIAN SALES, INC. is a Wyoming corporation, which is domiciled in Wyoming.

3.  Plaintiff NATALIE SMITH is the mother of CHAD SMITH and personal representative of the ESTATE OF CHAD SMITH.

4.  On July 5, 2023,  Plaintiff NATALIE SMITH filed a wrongful death complaint (attached as **Exhibit A**) against Defendant MARTIAN SALES, INC. in the Fifteenth Judicial Circuit Court of Palm Beach County, which alleges that Defendant's sale and marketing of kratom products caused her son's death.

5.  The Complaint specifically  alleges that Chad Smith's estate and the surviving members of his family  has suffered damages in excess of $100,000 on account of his wrongful death (Page 1, subtitle).

6.  On or about July 12, 2023, Plaintiff had a deputy sheriff serve a copy of the summons and Complaint on Defendant's registered agent in Cheyenne, Wyoming. On or about July 28, 2023, Plaintiff filed a copy of the verified return of service in the court docket (attached as **Exhibit B**).

7. On or about August 11, 2023, the Palm Beach County Clerk of Court issued a default against Defendant MARTIAN SALES INC. for "failing to file or serve any pleading or document as required by law."(attached as **Exhibit C**)

8. In early August 2023, Plaintiff retained the undersigned attorney to represent her in this case.

9. Plaintiff, through undersigned attorney, filed an amended complaint on August 30, 2023 ("Amended Complaint") (attached as **Exhibit D**).

10. Like the original complaint, the amended complaint alleges that Defendant is liable for the wrongful death of CHAD SMITH and, consequently, is liable to his estate for all damages that flowed from his death.

11. On or about August 30, 2023, Plaintiff's attorney served the Amended Complaint on Defendant by mailing a copy of same to Defendant's Wyoming registered agent.

12. On September 20, 2023,  Plaintiff's attorney received an email from attorney Daniel Delnero, of Squire Patton Boggs, who stated that his firm represented Defendant.  He requested an extension of time to secure counsel to respond to  the Amended Complaint. Plaintiff's attorney emailed a reply on the same day, in which he agreed to extend the deadline for Defendant to respond to October 10, 2023.

13. On September 28, 2023,  Defendant, through its attorneys, removed the case to Federal

Court on the asserted basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

14. Plaintiff now files this Motion for Remand within 30 days of the removal of the case

pursuant to 28 U.S.C. § 1447.

**<u>Summary of Legal Argument:</u>**

Defendant failed to remove this case to federal court  within 30 days of the date of  Defendant's

receipt of service of the initial pleading as required by  28 U.S. C. Section 1446(b)(1).

Defendant's failure to timely remove the case is grounds for immediate remand of the case to the

state court.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

**A.** Remand this case back to the Circuit Court of the Fifteenth Judicial Circuit

in and for Palm Beach County, Florida;

**B.** Award Plaintiff NATALIE SMITH reasonable attorney's fees and costs

incurred in conjunction with the preparation of this Motion for Remand; and

**C.** Grant any other relief this Court deems just and proper.

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
REMAND</u>**

## I.    APPLICABLE FEDERAL STATUTES AND RULES

Federal Statute 28 U.S.C. §1332, entitled, "Diversity of citizenship; amount in controversy;

costs," states in pertinent part:

> (a)   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> > (1) citizens of different states;
> > (2) citizens of a state and citizens or subjects of a foreign state;
>
> * * *

28 U.S.C. §1332(a).

Federal Statute 28 U.S.C. §1446, entitled, "Procedure for removal of civil actions,"

provides in pertinent part:

> **(b)(1)** The notice of removal of a civil action or proceeding shall be
>
> filed within 30 days after the receipt by the defendant, through service
>
> or otherwise, of a copy of the initial pleading setting forth the claim for
>
> relief upon which such action or proceeding is based, or within 30 days
>
> after the service of summons upon the defendant if such initial pleading
>
> has then been filed in court and is not required to be served on the
>
> defendant, whichever period is shorter.

**(c)(2)**If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy…"

28 U.S.C. §1446(b)(1) and (c)(2)

Federal Statute 28 U.S.C §1447 entitled, "Procedure after removal generally," provides in pertinent part:

(c)  A motion to remand a case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as the result of the removal.  A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court.  The State court may thereupon proceed with such case.

28 U.S.C. §1447(c).

## II.    LEGAL ARGUMENT - FEDERAL DIVERSITY JURISDICTION

## A.    Burden

"The burden of establishing federal jurisdiction falls on the party attempting to remove a case from state court." *Golden v. Dodge-Markham Co., Inc.,* 1 F.Supp.1360, 1362 (M.D. Fla. 1998); *see also Calbalceta v. Standard Fruit Company,* 883 F.2d 1553 (11th Cir. 1989) (Florida) (motion for remand, the burden rests on removing party to show the action was properly removed); *Woods v. Firestone Tire & Rubber Company,* 560 F.Supp. 588 (S.D. Fla. 1983).  The removing defendant has the burden of proving the existence of federal jurisdiction. *Tapscott v. MS Dealer Service Company,* 77 F.3d 1353, 1356 (11th Cir. 1996), abrogated on other grounds.  Accordingly, the district court is required to resolve all doubts about federal jurisdiction in favor of remand.  *Id.*

The court's removal jurisdiction must be strictly construed.  *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11th Cir. 1994).  "[W]here a plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11th Cir. 1994), citing *Boyer v. Snap On Tools Corp.,* 913 F.2d 108 (3rd Cir. 1990); *Coker v. Amoco Oil Company,* 709 F.2d 1433 (11th Cir. 1983).

## B.    Doubt As to Federal Jurisdiction.

Where there is any doubt concerning the jurisdiction of the federal court on removal, the case should be remanded.  *Woods v. Firestone*, 560 F. Supp. 588 (S.D. Fla. 1983).  Jurisdiction should be retained only where jurisdiction is clear.  *Id.*  The federal district court must remand to the state court any case that was removed improvidently or without necessary jurisdiction. *Glaziers, Glassworkers, Inc. v. Florida Glass & Mirror,* 409 F. Supp. 225, 226 (M.D. Fla. 1996).  See also, *BankUnited v. Blum*, No. 14-81232-CIV-Marra, 2015 WL 328241 (S.D. Fla. Jan. 26, 2015).

### C.    Burden of Proof to Show Removal is Proper

The party seeking to invoke federal jurisdiction through removal has" the task of proving to the court exactly when the 30 day time limit of 28 U.S.C. §1446(b)(1) began to run*." Clingan v. Celtic Life Ins. Co*, 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003).

In ascertaining whether a complaint's allegations support removal the court may make "reasonable deductions" and use "common sense" to determine if removal is proper. *Carney v. Haddock*  (S.D. Fla. 2016), citing *Roe v. Michelin N. Am., Inc*., 613 F.3d 1058, 1061 (11th Cir. 2010)  "Courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F. 3d at 1061.

### D.  Proving Valid Service of Process

Section 48.21, Florida Statutes (2013), governs returns of executions of process. Section 48.21(1) provides that the process server "shall note on a return-of-service form attached thereto, the date and time when it comes to hand, the date and time when it is served, the manner of service, the name of the person on whom it was served."...

"If the return is regular on its face, then the service of process is presumed to be valid .." *Sunseeker Int'l Ltd. v. Devers*, 50 So.3d 715, 717 (Fla. 4th DCA 2010)

## III.    LEGAL ARGUMENT – MOTION TO REMOVE IS UNTIMELY

As a threshold matter, a Defendant is required to remove a case within thirty days after the date it is served the initial pleading setting forth a claim for relief upon which such jurisdiction is based . 28 U.S.C. §1446(b)(1).  A good faith statement of alleged damages in a complaint shall be

deemed to state the  amount in controversy under section 1332(a), and triggers the thirty day time period referenced above. 28 U.S.C. §1446 (c)(2)

Plaintiff served her initial Complaint against Defendant MARTIAN SALES, INC. on July 12, 2023, and filed it 7 days prior.  Page 1 of the Complaint (subtitle)  contains a clear statement that Plaintiff is seeking damages in excess of $100,000, which is deemed the amount in controversy pursuant to  28 U.S.C. §1446 (c)(2).  Because the alleged damages exceed the diversity jurisdiction threshold of  $75,000, it is clear that the initial pleading set forth a claim that was removable to federal court.  The service of process of the initial complaint is presumed valid based on the verified return of service, executed by the process server and subsequently filed by Plaintiff, because it is regular on its face.  Service of the initial complaint on Defendant on July 12th started the 30 day time period during which Defendant could remove the case to federal court under 28 U.S.C. §1446(b)(1).  Defendant, however, failed to avail itself of this opportunity.

It was not until September 28, 2023, nearly 30 days after Plaintiff filed its Amended Complaint, that Defendant removed the case to federal court.  The memorandum of law attached to Defendant's Notice of Removal (page 3, Section D) argues that removal was timely because it occurred less than thirty days after Plaintiff served its amended complaint.  This memorandum fails, however, to account for the fact that the original complaint was the initial pleading in this matter, that it was validly served on Defendant on July 12th, and  that it contained a clear statement of alleged damages that meets the criteria of 28 U.S.C. §1446 (c)(2).   Had Defendant stated these facts it would not have been possible to conclude that Defendant's removal of the case was timely under 28 U.S.C. §1446(b)(1).

Because Defendant failed to remove this case to federal court within 30 days of receipt of service of Plaintiff's original complaint, Defendant has failed to comply with 28 U.S.C.

§1446(b)(1).  When a case is removed outside the time frames specified by statute, the federal court must remand the case to state court upon timely motion for remand. This motion for remand is timely pursuant to  28 U.S.C. §1447 .  Therefore, this court should remand the case back to the state court.

## CONFERENCE OF COUNSEL PURSUANT TO LOCAL RULE 7.1

Counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion. On the morning of October 6th, Plaintiff NATALIE SMITH's Counsel called and spoke to Defendant's Counsel Jason Joffee concerning this matter and the parties were unable to agree to a resolution outside the legal process.

Respectfully Submitted by,

**/s/ John Clarke**

John Clarke Esq., Attorney for Plaintiff

Florida Bar Number.: 118610

**Clarke Law P.A.**

1975 East Sunrise Blvd. Suite 626, Fort Lauderdale Florida 33304

Telephone: (305)467-5560

Primary e-mail address: john@clarkelawpa.com

Secondary e-mail address: clarkelaweservice@gmail.com

### Certificate of Service

I certify that I have filed this document on October 9, 2023 through the CM/ECF system, which has served the same by email on all parties.

**/s/John Clarke**

John Clarke, Counsel for Plaintiff

**EXHIBIT A**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT

IN AND FOR PALM BEACH COUNTY, FLORIDA

NATALIE SMITH, as the Personal Representative

of the ESTATE OF

CHAD SMITH, Decedent

Plaintiff,

Vs.

MARTIAN SALES INC.

Defendant.

50 2023 CA 01 1 7 0 4 XXXX MB

## COMPLAINT

### EXCEEDS $100,000

COMES NOW the Plaintiff, **NATALIE SMITH** as Personal Representative of the estate of, CHAD SMITH, herby sues **MARTIAN SALES INC.**, for false advertising and practicing medicine without a license and further allegations as follow:

### JURISDICTION, PARTIES, & VENUE

1. This action for damages exceeds $100,000 and is being filed within the applicable statutes of limitations.

2. Plaintiff NATALIE SMITH as THE PERSONAL REPRESENTATIVE OF THE ESTATE OF, CHAD SMITH, the Decedent, as appointed by the Circuit Court of the 17th Judicial Circuit, Probate Division, 60J (see letters of administration Exhibit A) and is a resident of Broward County, Florida and is otherwise *sui juris*.

3. **CHAD SMITH** (Decedent) had been residing at 10102 Dahlia Ave. Palm Beach Gardens, Florida 33410 in Palm Beach County, Florida, and was otherwise *sui juris*.

4. The Defendant, **MARTIAN SALES, INC.** is a Wyoming corporation, with its principal place of business in Cheyenne, Wyoming.

1

5. Venue is proper in this Court because the Decedent was a resident and died in Palm Beach County where the Defendant, **MARTIAN SALES INC.,** also regularly does business.

## GENERAL ALLEGATIONS

6. **MARTIAN SALES INC.** is a for profit corporation that intentionally targets men and women who have a terminal illness, the disease of addiction. **MARTIAN SALES INC.** is an unregulated Kratom lab that manufactures and sells elements of poisons known to kill vulnerable people. The time has come to shut down **MARITIAN SALES INC.** Kratom lab altogether by confronting them legally with the deadly results of their evil actions. **MARTIAN SALES INC**. intentionally and knowingly deceived, Decedent, **CHAD SMITH,** for the worst reason imaginable, money.

7. Addiction is a terminal disease which the **CHAD SMITH** had. The only way of survival is complete abstinence. The Defendant is in the business of manufacturing a variety (and in many misleading forms) as a "natural" opioid, known as Kratom. The Defendant both lured and misled **CHAD SMITH** with special advertising and labeling that would appeal to a diseased individual and intentionally resenting Kratom as a cure which in fact resulted in **CHAD SMITH'S** death.

8. Any conditions precedent to the filing of this lawsuit has either been met, satisfied, or waived.

## COUNT ONE, FALSE ADVERTISING

Plaintiff restates, alleges, and incorporates the allegations set forth in paragraphs 1 through 8, above, as if fully stated herein.

9. **Kratom is already banned in several states for the above reasons. These states and areas of banning are:** · Alabama · Arkansas · Indiana · Rhode Island · Vermont · Wisconsin. And in Sarasota County, Florida.

10. The Decedent, **CHAD SMITH,** was born with the disease of addiction and mental illness and was fooled, misled, betrayed, by the Defendant to think that Kratom was an answer to feeling better.

11. **CHAD SMITH** was lured into buying Kratom by the Defendant's intentional use of the letters OP. in the labeling using the letters "OP" to infer "OPiods" both to attract **CHAD SMITH** unconsciously and consciously with the intent of triggering **CHAD SMITH'S** addiction disease to gain **CHAD SMITH'S** trust and his business.

12. **MARTIAN SALES INC**. used labeling names and packaging to imitate illegal street drugs by naming it "OPMS BLACK" (like black tar heroin) (See Exhibit B). **MARTIAN SALES INC.** also sells white vein Kratom that was intentionally packaged and designed

with a see-through bag revealing contents that looks like a bag of cocaine (see Exhibit B Kratom products taken into evidence by Palm Beach Gardens Police during their investigation of **CHAD SMITH'S** death.)

## COUNT TWO. PRACTICING MEDICINE WITHOUT A LICENSE

13. O.P.M.S. is on the label of the **MARTIAN SALES INC.** products which they say stands for: Optimized Plant Mediated Solutions. "Mediated" closely resembling "Medicated" and the word "Solutions" is intentionally meant to be presented to addiction suffers, like **CHAD SMITH**, as a 'Solution" to their terminal disease of addiction. Furthermore, **MARTIAN SALES INC.'S** trademark class is registered as **"018: "Medicines and Pharmaceutical Preparations".** (See Exhibit B registered trademarks belonging to **MARTIAN SALES INC.) MARTIAN SALES INC. is operating as an unregistered pharmaceutical company. Killing people without consequence.**

14. The Defendant knows that the Kratom is a deadly toxin that has caused and been a part of the deaths of many men and women in Florida and elsewhere.

15. Kratom contains Mitragynine – An alkaloid found in the Kratom plant, which is consumed for its stimulant and analgesic (opioid-like) effects. The leaves of the Kratom plant, either whole or crushed, are smoked, chewed or prepared as tea. In addition, plant extract containing mitragynine is available in tablets, capsules, and liquid.

16. Arkansas, Tennessee, Vermont and Wisconsin have passed laws classifying the ingredients in kratom as controlled substances. An Indiana law classifies kratom as a synthetic drug, according to the NCSL.

17. The Food and Drug Administration has identified kratom as a botanical substance that could pose a risk to public health and has warned consumers not to use it.

18. The Drug Enforcement Administration lists kratom as a drug of concern. Kratom has stimulant effects in low doses and sedative effects in high doses, according to the DEA.

19. **MARTIAN SALES INC.** prolonged the Decedent's cravings by presenting Kratom as a harmless and healing substance. The use of Kratom, rather than curing his disease or lessening it, escalated **CHAD SMITH'S** physiological cravings without his knowing why because **MARTIAN SALES INC.** played on the ignorance and vulnerability of mentally ill persons by presenting Kratom as a harmless alternative to make one feel better. **MARTIAN SALES INC.** is in fact nothing more than an out-of-control unregulated Kratom lab assisting and fueling the opioid crisis while people are dying as they rake in the dough.

20. Certain ingredients in Kratom bind to opioid receptors in the brain. Therefore, those with the disease of addiction are prey to needing higher and higher dosages until Kratom kills them or lays the foundation for them to seek out stronger forms of opioids for relief till they die of Fentanyl mixed with Kratom (Mitragynine) as in the case of **CHAD SMITH.**

21. **MARITAN SALES INC.** is also responsible for sentencing the families and friends of those like, **CHAD SMITH**, to a lifetime of unimaginable, indescribable, unrelentingly, grief, agony, and suffering. They must be held accountable.

22. **CHAD SMITH** died on Aug. 9, 2021. (See Exhibit C death certificate).

As a direct and proximate result of **MARTIAN SALES, INC.** intentional targeting and exasperating, **CHAD SMITH'S** terminal disease, fueling and feeding his disease, misleading **CHAD SMITH** into thinking Kratom was a healing, harmless, "medication" and a "solution" to his disease, **CHAD SMITH** died, and Natalie Smith, hereby makes claims against **MARTIAN SALES, INC,** for all damages recoverable pursuant False Advertising Florida Statute s. 817.41 and Practicing Medicine Without A License. s. 775.082, s. 775.083, or s. 775.084 and including, but not limited to the following:

A.  **For loss of support, companionship, loss of parental guidance to Decedent's disabled daughter, and for severe mental pain and suffering from the date of Decedent's death and into the future;**

B. **All funeral and burial expenses paid by the survivors.**

**WHEREFORE, Plaintiff NATALIE SMITH, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF, CHAD SMITH, the Decedent, demands judgement for damages EXCEEDING $100,000, against the Defendant MARTIAN SALES, INC., and such other relief as the Court deems just and proper.**

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date: July 5, 2023

Natalie Smith, Plaintiff, and Personal

Representative of the Estate of Chad Smith, Decedent

6311 NW 47 Court

Coral Springs, Fla. 33067

954-825-7287

Godisjoy67@gmail.com

Instr# 118321124 Page 1 of 1 Recorded 03/08/2023 at 11:54 AM
Case 9:23-cv-81329-DMM Document 8 Entered on FLSD Docket 10/10/2023 Page 16 of 46
Broward County Commission

*EXHIBIT A*

Filing # 168249041 E-Filed 03/07/2023 07:22:28 PM

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **PRC220000245**  DIVISION: **60J**  JUDGE: **Lopane, Nicholas (60J)**

**In Re: Estate of: Smith, Chad Ronald**

_____/

### LETTERS OF ADMINISTRATION

TO ALL WHOM IT MAY CONCERN

WHEREAS CHAD RONALD SMITH, a resident of Broward County, Florida died on August 9, 2021 owning assets in the State of Florida, and

WHEREAS NATALIE SMITH has been appointed Personal Representative of the Estate of CHAD RONALD SMITH and has performed all acts prerequisite to issuance of Letters of Administration in the Estate.

NOW, THEREFORE I, the undersigned Circuit Judge declare NATALIE SMITH to be duly qualified under the laws of the State of Florida to act as Personal Representative of the Estate of CHAD RONALD SMITH, deceased with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to the law.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 7th day of March, 2023.

PRC220000245 03-07-2023 11:20 AM

PRC220000245 03-07-2023 11:20 AM
Hon. Nicholas Lopane
**CIRCUIT COURT JUDGE**
Electronically Signed by Nicholas Lopane

**Copies Furnished To:**
███████████████, E-mail : lindquistesq@aol.com
Marian Audrey Lindquist , E-mail : lindquistlaw@aol.com

NOT A CERTIFIED COPY

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 03/07/2023 07:22:28 PM.****

Exhibit B

Page 1



OPMS - Black Liquid Extract Kratom Shot - 8.8ml

DELTA-8 THC

DELTA-9 THC

DELTA-10 THC

THCA

MUSHROOMS

SHOP BY BRAND

ABOUT US

THC

HHC

CBD

CBN

CBD FOR PETS

KRATOM

ACCESSORIES

HEMP FLOWER

NOT A CERTIFIED COPY

6

86

*Page 2*

| Mark Text | Image | Register | NICE classifications | Registration Date | Expiry Date |
|---|---|---|---|---|---|
| O.P.M.S. OPTIMIZED PLANT MEDIATED SOLUTIONS GOLD |  | United States Patent and Trademark Office | 5 | 2021-01-26 | |
| O.P.M.S. OPTIMIZED PLANT MEDIATED SOLUTIONS |  | United States Patent and Trademark Office | 5 | 2021-01-26 | |
| O.P.M.S. OPTIMIZED PLANT MEDIATED SOLUTIONS SILVER |  | United States Patent and Trademark Office | 5 | 2021-01-26 | |

NOT A CERTIFIED COPY

| | |
|---|---|
| Research | (https://en.wikipedia.org/w/index.php?search=%22O.P.M.S.%22) (https://twitter.com/search?q=%22O.P.M.S.%22) (https://nitter.domain.glass/search?f=tweets&q=%22O.P.M.S.%22) (https://translate.google.com/#view=home&op=translate&sl=auto&tl=en &text=O.P.M.S.) (https://www.wolframalpha.com/input/?i=O.P.M.S.) OneLook (https://www.onelook.com/?w=%22O.P.M.S.%22) Acronym Finder (https://www.acronymfinder.com/~/search/af.aspx? Acronym=%22O.P.M.S.%22&string=exact) |
| Serial Number | 88444263 |
| Registration Number | 5942734 |
| Mark Literal Elements | O.P.M.S. |
| Mark Drawing Type | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)/NUMBER(S) |
| Mark Type | TRADEMARK |
| Standard Character Claim | No |
| Register | PRINCIPAL |
| Current Location | PUBLICATION AND ISSUE SECTION 2019-12-24 |
| Basis | 1(a) |
| Class Status | ACTIVE |
| Primary US Classes | 006: Chemicals and Chemical Compositions |
| | 018: Medicines and Pharmaceutical Preparations |
| | 044: Dental, Medical and Surgical Appliances |
| | 046: Foods and Ingredients of Foods |
| | 051: Cosmetics and Toilet Preparations |
| | 052: Detergents and Soaps |
| Primary International Class | 005 - Primary Class |
| | (Pharmaceuticals) Pharmaceutical, veterinary and sanitary preparations; dietetic substances adapted for medical use, food for babies; plasters, materials for dressings; material for stopping teeth, dental wax; disinfectants; preparations for destroying vermin; fungicides, herbicides. |
| Filed Use | Yes |
| Current Use | Yes |
| Intent To Use | No |
| Filed ITU | No |
| 44D Filed | No |

*Trademark Deception*

*7 PT2*

NOT A CERTIFIED COPY

NOT A CERTIFIED COPY

8



9

EXHIBIT C

## STATE OF FLORIDA

THIS DOCUMENT HAS A LIGHT BACKGROUND ON TRUE WATERMARKED PAPER. HOLD TO LIGHT TO VERIFY FLORIDA WATERMARK.

### BUREAU of VITAL STATISTICS

# CERTIFICATION OF DEATH

**STATE FILE NUMBER:** 2021150568       **DATE ISSUED:** JULY 29, 2022

**DECEDENT INFORMATION**       **DATE FILED:** AUGUST 12, 2021

NAME: CHAD RONALD SMITH

DATE OF DEATH: AUGUST 9, 2021      SEX: MALE    SSN: ▓▓▓▓▓▓▓    AGE: 037 YEARS
DATE OF BIRTH: AUGUST 6, 1984      BIRTHPLACE: FORT LAUDERDALE, FLORIDA, UNITED STATES
PLACE OF DEATH: EMERGENCY ROOM/OUTPATIENT
FACILITY NAME OR STREET ADDRESS: PALM BEACH GARDENS MEDICAL CTR
LOCATION OF DEATH: PALM BEACH GARDENS, PALM BEACH COUNTY, 33410
RESIDENCE: 6311 NW 47 CT , CORAL SPRINGS, FLORIDA 33067, UNITED STATES     COUNTY: BROWARD
OCCUPATION, INDUSTRY: BEHAVIORAL TECHNICIAN, TREATMENT CENTERS
EDUCATION: HIGH SCHOOL GRADUATE OR GED COMPLETED     EVER IN U.S. ARMED FORCES? NO
HISPANIC OR HAITIAN ORIGIN? NO, NOT OF HISPANIC/HAITIAN ORIGIN
RACE: WHITE

## SURVIVING SPOUSE / PARENT NAME INFORMATION
### (NAME PRIOR TO FIRST MARRIAGE, IF APPLICABLE)

MARITAL STATUS: NEVER-MARRIED
SURVIVING SPOUSE NAME: NONE
FATHER'S/PARENT'S NAME: DAVID RAYMOND SMITH
MOTHER'S/PARENT'S NAME: NATALIE BROSKY

## INFORMANT, FUNERAL FACILITY AND PLACE OF DISPOSITION INFORMATION

INFORMANT'S NAME: NATALIE SMITH
RELATIONSHIP TO DECEDENT: MOTHER
INFORMANT'S ADDRESS: 6311 NW 47 CT , CORAL SPRINGS, FLORIDA 33067, UNITED STATES
FUNERAL DIRECTOR/LICENSE NUMBER: KAREN M. FORREST, F045297
FUNERAL FACILITY    MONARCH FUNERAL HOME & CREMATION SERVICES LLC F438970
         2950 NORTH STATE RD 7 STE 101, MARGATE, FLORIDA 33063
METHOD OF DISPOSITION BURIAL
PLACE OF DISPOSITION OUR LADY QUEEN OF HEAVEN CATHOLIC CEMETERY
         NORTH LAUDERDALE, FLORIDA

## CERTIFIER INFORMATION

TYPE OF CERTIFIER: ASSOCIATE MEDICAL EXAMINER     MEDICAL EXAMINER CASE NUMBER: 211501484
TIME OF DEATH (24 HOUR): 2307     DATE CERTIFIED: OCTOBER 8, 2021
CERTIFIER'S NAME: NATALIA BELOVA
CERTIFIER'S LICENSE NUMBER: ME138113
NAME OF ATTENDING PRACTITIONER (IF OTHER THAN CERTIFIER) NOT APPLICABLE

## CAUSE OF DEATH AND INJURY INFORMATION

MANNER OF DEATH: ACCIDENT
CAUSE OF DEATH - PART I - AND APPROXIMATE INTERVAL ONSET TO DEATH
a MIXED DRUG (FENTANYL AND MITRAGYNINE) INTOXICATION

b

c

d

PART II - OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I:

AUTOPSY PERFORMED? YES      AUTOPSY FINDINGS AVAILABLE TO COMPLETE CAUSE OF DEATH? YES
DATE OF SURGERY:      DID TOBACCO USE CONTRIBUTE TO DEATH? UNKNOWN
REASON FOR SURGERY:
PREGNANCY INFORMATION: NOT APPLICABLE
DATE OF INJURY AUGUST 9, 2021     TIME OF INJURY (24 HOUR): UNKNOWN     INJURY AT WORK? NO

10

**EXHIBIT B**

# Laramie County Sheriff's Department

## Certificate of Service

NATALIE SMITH AS THE PERSONAL
REPRESENTATIVE OF THE ESTATE OF
CHAD SMITH DECEDENT
vs.
MARTIAN SALES INC.

**Sheriff's #** 23002054
**Case #** 50-2023-CA-011704-
XXXX-MB

**Affidavit of Service**

SUMMONS AND COMPLAINT

I, Deputy C JOHNSON, Badge # C58 of the Laramie County Sheriff's Department, certify and affirm that on 7/12/2023 at 10:12 AM at 1621 CENTRAL AVE Cheyenne, WY 82001, served within authenticated SUMMONS AND COMPLAINT upon WYOMING REGISTERED AGENTS, the Servee named here in the following manner.

Business

By delivering to and leaving with ROSE GARCIA, OFFICE MANAGER FOR WYOMING REGISTERED AGENTS, AGENT FOR MARTIAN SALES INC., personally, a true copy thereof, said person being known or identified to me as the person mentioned and described therein.

By _____
C JOHNSON #C58

Deputy Sheriff

The foregoing instrument was acknowledged before me by _C. Johnson_ this _12_ day of _July_ 20_23_.

_____
Notary Public

SHAREN L. HARBAUGH  NOTARY PUBLIC
COUNTY OF
LARAMIE
STATE OF
WYOMING
MY COMMISSION EXPIRES 5/23/25

NOT A CERTIFIED COPY

**EXHIBIT C**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

Case Number: 50-2023-CA-011704-XXXX-MB
Division:        AK: Circuit Civil Central - AK

(Civil)

NATALIE SMITH,
                Plaintiff(s),
        vs.

MARTIAN SALES INC,
                Defendant(s).

## DEFAULT

A default is entered in the above styled cause against:
MARTIAN SALES INC


for failure to serve or file any pleading or document as required by law.

Dated on: 11th of August, 2023.


**JOSEPH ABRUZZO**
**Clerk of the Circuit Court & Comptroller**

By: _____

Catul, Kimberly as Deputy Clerk

☐  Copies Not furnished – envelopes not provided.

☒  Copies furnished to: GODISJOY67@GMAIL.COM

FILED: PALM BEACH COUNTY, FL JOSEPH ABRUZZO, CLERK. 08/11/2023 12:12:59 PM

**EXHIBIT D**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

NATALIE SMITH, as
Personal Representative of the ESTATE
OF CHAD SMITH,
on behalf of the Estate and his
Survivors,

CASE NO:  50-
2023CA011704XXXXMB

Plaintiff,
vs.

MARTIAN SALES, INC., a Wyoming
corporation,
Defendant

# AMENDED
# COMPLAINT FOR WRONGFUL DEATH

## I.    INTRODUCTION

This is a product liability  and negligence action against the manufacturer of a product
that contains kratom, a dietary supplement with known health risks. Plaintiff,
NATALIE SMITH, as Personal Representative of THE ESTATE OF CHAD SMITH
and on behalf of his estate and his survivors, sues Defendant MARTIAN SALES, INC.,
and alleges as follows:

## II.    STATEMENT OF PARTIES

1.    The ESTATE OF CHAD SMITH (hereinafter "the Estate") has been
opened in a probate action by the Circuit Court of Palm Beach County (CASE
NUMBER PRC220090245).

2.     Chad Smith (hereinafter "Chad") was the father of Eliana Vicini ("Eliana"), who was eighteen years old at the time of his death, and is his sole surviving heir.

3.     NATALIE SMITH (hereinafter "Natalie"), Chad's mother, was duly appointed by the Palm Beach County Probate Court, as Personal Representative of the Estate. (See Letters of Administration, attached as **Exhibit A**).

4.     At all material times, Natalie has been a resident of the state of Florida. She brings this claim on behalf of the Estate and Chad's surviving daughter, Eliana.

5.     Defendant MARTIAN SALES INC. (hereinafter "MARTIAN SALES"), is a foreign corporation domiciled  in the state of Wyoming. At all material times to this lawsuit, Defendant MARTIAN  SALES engaged in the marketing, sale, and distribution of Kratom products to consumers nationwide, including consumers in Florida. Defendant MARTIAN SALES INC. Marketed, sold , and distributed its products under several brand names, including O.P.M.S. Gold and Remarkable Herbs.

6.     At all material times, Defendant MARTIAN SALES sold its products, including O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder,  to smoke shops in South Florida for the purpose of retail sale to  consumers.

7.      At all material times, Defendant MARTIAN SALES marketed, packaged, and distributed its products,  including O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa

2

20 Ounce powder ,through its own websites, including https://opmkratom.com/, as well as websites of affiliates and third-party distributors.

8.      At all material times, Defendant MARTIAN SALES maintained strong and continuous business ties to the state of Florida.

## III.    JURISDICTION AND VENUE

9.      The Palm Beach County Court has jurisdiction over the parties as the decedent died in Palm Beach County while domiciled here.  Also, Defendant MARTIAN SALES had strong and continuous business ties to Palm Beach County, Florida at all material times to this lawsuit.

10.     This action is for damages in excess of fifty thousand dollars ($50,000.00),  therefore the Circuit Division  of this court has jurisdiction of this case.

11.     Venue is proper in Palm Beach County as Chad's death occurred in this county and Defendant MARTIAN SALES has at all material times continuously conducted business here.

## IV.    STATEMENT OF FACTS
v.

## A.    Kratom is a deadly drug that is being marketed as a dietary supplement in the United States.

12.     Kratom is an herbal extract from the leaves of *Mitragyna speciosa*, a tropical tree native to Southeast Asia.

13.     The nature and extent of Kratom's impact upon human physiology is the topic of ongoing study.

14.     Although not formally classified as an opiate, Kratom contains dozens of psychoactive compounds or alkaloids, many of which are not understood.

15.     The two (2) most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds induce physiological effects of euphoria, sedation, and analgesia.

16.     Kratom's serious health risks include dependence, addiction, overdose, and death.[1] Scientific literature documents serious concerns regarding the toxicity of Kratom in multiple organ systems. Consumption of Kratom can lead to many adverse health impacts, including nausea, vomiting, itching, sweating, dry mouth, constipation, increased urination, tachycardia, drowsiness, anorexia, weight loss, insomnia, hepatotoxicity, seizures, and hallucinations.

---

[1]  See FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid) (last accessed Nov. 1, 2022); see also DOJ DEA Drug Fact Sheet – Kratom (https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf) (last accessed Nov. 1, 2022).

17.     Kratom is not approved for medical purposes and Kratom is illegal in several states and cities, including: Alabama, Arkansas, Indiana, Rhode Island, Vermont, Wisconsin; San Diego, California; Denver, Colorado; Sarasota County, Florida; Jerseyville, Illinois; and Union County, Mississippi.

18.     The United States Food and Drug Administration has concluded that use of kratom as a dietary supplement is unsafe and the marketing of kratom dietary supplements illegal. According to FDA guidance from 2019 (and currently in effect), "kratom is not appropriate for use as a dietary conventional supplement…. Dietary supplements that contain kratom are adulterated under section 402(f)(1)(B) of the FD and C Act" [2]

19.     The FDA has issued numerous warnings against the use of products containing Kratom and its psychoactive compounds and has taken action against those who illegally sell the product for pain treatment and other medical uses.[3]

20.     Nonetheless, products containing Kratom are sold online and at numerous retail outlets throughout the country, including gas stations, vape shops, and head shops.

---

[2] See FDA Statement https://www.fda.gov/news-events/public-health-focus/fda-and-kratom.

[3] See FDA Statement, Statement from FDA Commissioner Scott Gottlieb, M.D. on FDA advisory about deadly risks associated with Kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom) (last accessed Nov. 1, 2022).

21.     Companies and individuals that produce and sell Kratom, including Defendant MARTIAN SALES, design and market Kratom products, including liquid shots capsules, and powders that are dissolvable in liquid, as untested medicines and dietary supplements.

22.     In fact, Defendant MARTIAN SALES copyrighted its O.P.M.S. Gold Liquid Kratom Extract, one of the products that caused CHAD's death, as a medicine/pharmaceutical preparation (See **Exhibit B**).

23.     Due to kratom's addictive properties, and the kratom industry's flouting of consumer protection laws, kratom use has expanded exponentially in the United States in the last ten years. A 2019 report from the American Association of Poison Control Centers (AAPCC) noted that there was a 52-fold increase in kratom use, based on reports of intoxication,  between the years 2011 to 2017.

24.     As kratom use has increased,  many consumers have paid the ultimate price.  Over 18 months in 2016 and 2017, 152 overdose deaths involving kratom were reported in the United States, with kratom as the primary overdose agent in 91 of the deaths

25.     Defendant MARTIAN SALES has misrepresented and misled consumers about the risks of Kratom by failing to provide any information about the known risks of use of kratom on the labels of its products, which led to Chad's tragic death.

26.     Defendant MARTIAN SALES has also made affirmative misrepresentations that kratom effectively treats anxiety on its website blog (https://opmswholesale.com/f/how-can-kratom-help-anxiety) despite the lack of

medical research to validate the claim and that, pursuant to FDA guidance, the marketing kratom as a drug is illegal.

## B.     Chad Smith suffered a preventable and untimely death caused by Kratom.

27.     This case is about the unnecessary death of Chad Smith from kratom intoxication.

28.     At the time of his death, Chad was 37 years old and living with his fiancé, Christa Moore ("Christa"), and her mother  at 10102 Dahlia AV., Palm Beach Gardens, Florida.

29.     Chad had a daughter named Eliana Vicini, who was eighteen years old at the time of Chad's death.  She suffered from a mental disability since childhood and depended on Chad for financial and emotional support.

30.      Chad worked full time at Singer Island Health, a local addiction treatment center.

31.     Chad had a history of anxiety and depression that began in childhood. In spite of his struggles, Chad spoke at mental illness support groups and sought to help others overcome these issues.

32.     Chad's coworkers describe him as a role model to all patients and staff facing struggles with mental illness.

33.     In the weeks prior to his death, Chad had apparently begun purchasing and consuming Defendant MARTIAN SALES's kratom products.  Based on his bank statement (attached as **Exhibit C**), Chad purchased these products at at Pro Vape Shop, 230 S Cypress Rd A, of Pompano Beach, Florida, 33060.

34.     Defendant MARTIAN SALES's  failure to provide accurate information on the labeling of its kratom products, together with Defendant's false and misleading statements that kratom helps relieve anxiety led Chad to believe that Defendant's products were safe and effective for treating his anxiety.

35.     After returning home from dinner with Christa on the evening of August 9, 2021, Chad felt dizzy and went to his room to lie down.  When Christa emerged from the shower a few minutes later, she found Chad lying face down on his bed and unresponsive.

36.     Realizing something was wrong, she immediately called 911 for assistance.

37.     Emergency responders arrived within 15 minutes and, unable to resuscitate Chad, took him to Palm Beach Gardens Medical Center, where he was pronounced dead at 11:04 PM.

38.     Subsequently, police found a backpack in Chad's room that contained five bottles of O.P.M.S. Gold Liquid Kratom Extract and one bag of Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder.  The police took all these items into evidence (pictures attached as **Exhibit D**).

39.     Due to the nature of Chad's death, the Palm Beach County Medical Examiner, conducted an autopsy and toxicology analysis.   The toxicology analysis showed dose of mitragynine in Chad's blood of 3.349 mg/L, more 16 times the minimum lethal dose of 0.2 mg/L. This report also found trace amounts of fentanyl in his blood.  The medical examiner's opinion that fentanyl/kratom combo was the cause of Chad's death, and that both drugs act in concert, so it was impossible to

8

assign more blame to one over another. (report attached as **Exhibit E**)

40.     Plaintiff brings this lawsuit within two (2) years of decedent's date of death.

## V.     DAMAGES AND CAUSES OF ACTION

41.     Chad's untimely kratom-induced death  caused or will cause the following  economic losses to the Estate of CHAD SMITH: Decedent's medical and funeral expenses, and  lost net accumulations of Decedent's earnings and savings to his estate.

42.     Chad's untimely kratom-induced death also caused and will cause his surviving daughter Eliana  to lose parental companionship, instruction, and guidance, financial support and services from her father, and to  endure pain and suffering.

43.     The Estate and its beneficiaries have incurred and will continue to incur enormous general and special damages in an amount to be determined by a jury.

44.     Plaintiff NATALIE SMITH, as Personal Representative of the Estate of CHAD SMITH, sues on behalf of both the estate and Chad's surviving daughter Eliana.

## COUNT ONE –STRICT LIABILITY FOR FAILURE TO WARN

45.     Plaintiff hereby re-alleges all allegations stated above.

46.     MARTIAN SALES was engaged in the business of promoting, manufacturing, distributing, and selling various Kratom products, including O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom

White Vein Mitragyna Speciosa 20 Ounce powder, the products that caused Chad's untimely death.

47.     The Kratom products that Chad purchased and ingested were expected to and did reach Chad without substantial change in condition since the time they left Defendants' hand.

48.     MARTIAN SALES sold and distributed these Kratom products without placing information on the label regarding their known physiologic effects, recommended dosage, and known risks of dependence, overdose, and death associated with their consumption.

49.     An ordinary consumer would reasonably conclude that MARTIAN SALES's Kratom products were unreasonably  dangerous when sold without warnings or instructions about the known serious adverse health risks associated with their consumption, including overdose and death.Without bearing proper warnings and instructions, Defendant MARTIAN SALES's kratom products were unreasonably dangerous, unfit for their intended use, and highly dangerous and defective.

50.     Defendant MARTIAN SALES's failure to place warnings on its labels as to the serious health risks posed by its kratom products and instructions for safe use proximately caused Chad to consume them, and ultimately, overdose and die.

51.     MARTIAN SALES is strictly liable to Chad's estate for all the irreparable damages the estate and Chad's survivors have suffered due to its failure to provide adequate warnings and instructions for use on its unreasonably dangerous Kratom products.

## COUNT TWO –STRICT LIABILITY FOR DESIGN DEFECT

52.     Plaintiff hereby re-alleges all allegations stated above.

53.     At the time MARTIAN SALES manufactured O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder, the kratom products that caused Chad's death, these items were unreasonably dangerous as designed.

54.     Under a Consumer Expectation analysis, an ordinary consumer would find these Kratom products to be unreasonably dangerous, considering the products' intrinsic nature,  severity of potential harm (including death),  high concentration of compounds known to cause serious health risks, lack of information on the labels concerning health risks and recommended dosages, and the cost and feasibility of minimizing these risks.

55.     Defendant's Kratom products, "O.P.M.S. Gold Liquid Kratom Extract " and "Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder", were being used by Chad on the day of his death for the purpose for which they were marketed and intended.

56.     As a direct and proximate result of the dangerous design defects in Defendant MARTIAN SALES's kratom products, however, Chad Smith overdosed and died, causing irreparable injury and damages to his family and  the ESTATE OF CHAD SMITH .

## COUNT THREE – NEGLIGENCE

57.     Plaintiff hereby re-alleges all allegations stated above.

58.     As manufacturer, distributor, and seller of Kratom, Defendant MARTIAN SALES, at all material times, had a duty to investigate the health effects of kratom's chemicals, and to design products that were safe for human consumption prior to placing its products into the stream of commerce.

59.     Defendant MARTIAN SALES  also had a duty to ensure that its Kratom products were not  adulterated or misbranded, and that the labels of these products contained information on safe use of the product, including warnings of health risks, recommended dosage, and instructions for use.

60.     Defendant MARTIAN SALES knew or should have known that the O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder  kratom supplements that were sold to Chad were not FDA approved and were unreasonably dangerous for human consumption.  At the time these products were placed into the stream of commerce, there were FDA warnings that prohibited the sale of kratom products as dietary supplements and ample medical literature that identified health risks associated with the consumption of kratom products.

61.     Defendant MARTIAN SALES knew or should have known that the kratom products that were purchased by Chad were adulterated pursuant to FDA guidance, lacked warning labels and dosage instructions, and carried serious risks of injury and death to consumers, including Chad Smith.

62.     Defendant MARTIAN SALES breached its duty of care to consumers in designing, marketing, and selling kratom products, including O.P.M.S. Gold Liquid

Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder, in the following ways:

a. Defendant placed into the stream of commerce products made from a plant that contained many chemicals with unknown health risks.

b. Defendant designed and placed into the stream of commerce kratom products, which contained a higher concentration of mitragynine and 7- hydroxymitragynine, chemical constituents known to cause addiction and death, than are contained in a standard extract of kratom leaves.

c. Defendant designed and placed into the stream of commerce kratom products for the purpose of human consumption that it knew or should have known were illegal to sell as dietary supplements under the Food, Drug and Cosmetic Act.

d. Defendant developed and sold its O.P.M.S. Gold Liquid Kratom Extract, the product that led to Chad's death, in such a small bottle that the disclaimer on it is too tiny to be legible to the average consumer.

e. Defendant failed to put on the products' labels any warnings of known serious health risks associated with their use, recommended dosages, or instructions for use.

f. Defendant negligently misrepresented that its kratom products effectively treat anxiety on its blog.

13

63.     Defendant MARTIAN SALES's negligent manufacture, sale, and marketing of its kratom products were proximate causes of Chad's death, and caused irreparable damage to his family and his estate.

## COUNT FOUR –FRAUDULENT MISREPRESENTATION

64.    Plaintiff hereby re-alleges all allegations stated above

65.     Defendant MARTIAN SALES  intentionally concealed known material facts to Chad about O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder, including but not limited to:

a.   The health risks associated with regular consumption of Kratom products.

b.    Information regarding adverse events associated with Kratom products.

c.   The risk of addiction, overdose, and death associated with Kratom products.

d.   The fact that the products contained a higher concentration of mitragynine and 7- hydroxymitragynine, chemical constituents known to cause addiction and death, than are contained in a standard extract of kratom leaves.

e.   The fact that it was illegal to sell the products as dietary supplements and their use for that purpose was deemed unsafe by the FDA.

14

66. Defendant made a fraudulent misrepresentation on its's website blog that kratom was effective for treating anxiety even though Defendant knew there was no medical evidence to support this claim.

67. The above-stated material omissions by Defendant MARTIAN SALES were made with the intent to persuade and induce Chad and other consumers to regularly consume its kratom products.

68. Chad relied upon and was induced to act in reliance on Defendant MARTIAN SALES's misrepresentations and omissions when he in fact purchased and consumed Defendant's Kratom products under the assumption that the products were safe  dietary supplements and that said products could relieve his anxiety.

69. As a direct and proximate result of Defendant MARTIAN SALES fraudulent misrepresentations and omissions, Chad Smith died from consuming Defendant's dangerous kratom products, which caused irreparable injury to his surviving family and his estate.

## COUNT FIVE –NEGLIGENCE PER SE PURSUANT TO VIOLATIONS OF THE FOOD, DRUG, AND COSMETICS ACT AND DIETARY SUPPLEMENT HEALTH AND EDUCATION ACT

70. Plaintiff hereby re-alleges all allegations stated above

71. Defendant MARTIAN SALES markets, sells, and distributes dietary supplements containing mitragyna speciosa (a/k/a Kratom), in powder, liquid, and capsule form.

72. As a plant, Kratom is botanical and, therefore, a dietary ingredient within the meaning of 21 U.S.C. § 321(ff)(1)(C).

73. Kratom was not marketed as a dietary ingredient in the United

States prior to October 15, 1994; therefore, it is a new dietary ingredient within the meaning of 21 U.S.C. § 350b(d).

74.     The Federal Food, Drug, and Cosmetic Act ("FDCA") and the Dietary Supplement Health and Education Act - (DSHEA) (both contained in 21 U.S.C. Chapter 9) require manufacturers who wish to market dietary supplements that contain "new dietary ingredients" to prepare and submit a Premarket Notification to the FDA about these ingredients. Products containing Kratom are deemed adulterated unless the manufacturer or distributor has complied with the mandate of 21 U.S.C. § 350b(a)(2).

75.     This mandate requires (1) a premarket substantiation that the Kratom product is reasonably expected to be safe; and (2) a premarket NDI Notification that properly documents the evidence that the Kratom product is reasonably expected to be safe.

76.     Furthermore, pursuant to 21 U.S.C. § 331, the following are prohibited acts under the FDCA:

>   a.  The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.
>
>   b.  The adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce.
>
>   c.  The receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or

16

otherwise....

    d.    The manufacture within any Territory of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

21 U.S.C. § 331.

77.    According to the FDCA, a dietary supplement, such as kratom, is classified as a special category of food. Pursuant to this act, a food shall be deemed misbranded if "(1) its labeling is false or misleading in any particular, or (2) its advertising is false or misleading in a material respect or is in violation of Section 350(b)(2) 4 of this title." 21 U.S.C. § 343(a).

78.    A food is deemed misbranded if in package form unless it bears a label containing "(1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count." 21 U.S.C. § 343(e).

79.    Defendant MARTIAN SALES violated all above-referenced statutes by failing to notify the FDA of Kratom's ingredients before marketing and placing Kratom products into interstate commerce and by failing to undergo premarket substantiation to establish that Kratom is reasonably expected to be safe, and mislabeling and misbranding their Kratom products.

80.    Defendant MARTIAN SALES also violated the above statutes by failing to place on the labels of its O.P.M.S. Gold Liquid Kratom Extract and Remarkable Herbs Maeng Da Kratom White Vein Mitragyna Speciosa 20 Ounce powder the location of its principal place of business.

81.    The statutory standards mentioned above are designed to protect

consumers from the harms of unsafe dietary supplements, including adverse health impacts, overdose, and death.

82.     Chad was a member of the class of consumers of dietary supplements that the aforementioned statutes were designed to protect from harm.

83.     Chad's untimely death from use of Defendant MARTIAN SALES's kratom products was the type of harm that the aforementioned statutes were designed to prevent.

84.     Therefore, Defendants MARTIAN SALES's violations of the aforementioned federal laws constitute negligence per se.

The rest of this page intentionally left blank.

18

## VI.    PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, the ESTATE OF CHAD SMITH, by and through its Personal Representative, NATALIE SMITH, and on behalf of all its beneficiaries, respectfully requests:

      A.  A jury be impaneled to hear all claims stated in this complaint which it can try;

      B.  Judgment against Defendant MARTIAN SALES for wrongful death, and for general, and special damages in an amount to be proven at trial;

      C.  Reasonable attorney's fees and costs; and

      D.  Such other relief as the Court deems appropriate.

Respectfully submitted on August 30, 2023, by

**/s/ John Clarke**

### Certificate of Service

      I hereby certify that a true and correct copy of the foregoing has been served on the Florida Court Electronic Portal on this 30th day of August, 2023 and that, on the same day, a copy has been mailed by U.S. mail to Wyoming Registered Agents, 1621 Central Av. , Cheyenne, WY, 82001, the registered agent for Defendant MARTIAN SALES

John Clarke Esq., Attorney for Plaintiff

Florida Bar Number.: 118610

**Clarke Law P.A.**

1975 East Sunrise Blvd. Suite 626, Fort Lauderdale Florida 33304

Telephone: (305)467-5560

Primary e-mail address: john@clarkelawpa.com

Secondary e-mail address: clarkelaweservice@gmail.com

19